UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HECTOR DE LA RIVA, ROSS PERLMUTTER, and TED VERNON, on behalf of themselves and all others similarly situated, and BROCK MILLIGAN, CHARLES J. BACHMANN, and ROBERT BECKER, individually, <br><br>Plaintiffs, <br><br>vs. <br><br>HOULIHAN SMITH & COMPANY, INC., RICHARD HOULIHAN, ANDREW D. SMITH, and CHARLES BOTCHWAY, <br><br>Defendants. | 10 C 8206 <br><br> Judge Feinerman |

### MEMORANDUM OPINION AND ORDER

Hector De La Riva, Ross Perlmutter, Ted Vernon, and Brock Milligan brought this lawsuit in the Circuit Court of Cook County against Houlihan Smith & Company, Inc., Richard Houlihan, Andrew Smith, and Charles Botchway, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. Doc. 1 at 6-20. All four plaintiffs sued under the FLSA, while all but Milligan sued under the IMWL. Defendants removed the case to federal court. *Id*. at 1-4. The removal was proper, with 28 U.S.C. § 1441 providing federal question jurisdiction over the FLSA claims and 28 U.S.C. § 1367(a) providing supplemental jurisdiction over the IMWL claims. *See Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 979 (7th Cir. 2011). Events occurring since removal led the court to ask whether it should exercise its discretion under 28 U.S.C. § 1367(c) to relinquish jurisdiction over the IMWL claims. Doc. 66. Plaintiffs and Botchway

filed briefs on the issue. Docs. 67, 68. For the following reasons, the court relinquishes jurisdiction over the IMWL claims and remands them to state court.

Shortly after removal, Plaintiffs sought and received leave to file an amended complaint adding Charles Bachmann and Robert Becker as FLSA plaintiffs. Docs. 12, 13. Months later, Plaintiffs moved the court to enjoin Houlihan Smith (the entity defendant) from dissipating its assets. Doc. 30. From the motion itself and counsels' arguments in open court, it became apparent that Houlihan Smith likely would not have the assets necessary to satisfy a judgment if Plaintiffs prevailed on behalf of themselves and their fellow Houlihan Smith employees. This is why Plaintiffs sued not just Houlihan Smith, but also Houlihan, Smith, and Botchway, who according to the amended complaint are involved in the company's management, and who might possibly provide three additional pockets from which a large judgment could be paid. Doc. 12 at ¶¶ 5-8. Plaintiffs ultimately withdrew their motion to enjoin the alleged dissipation of the entity's assets, though without prejudice to reinstatement. Doc. 39.

The case's contours then began to crystalize. Vernon voluntarily dismissed his claims and exited the litigation. Docs. 40, 44. The two remaining IMWL plaintiffs, De La Riva and Perlmutter, moved under Federal Rule of Civil Procedure 23 to certify a class to pursue the IMWL claims. Doc. 42. Unlike the course pursued by plaintiffs and their counsel in other wage-and-hour suits, Plaintiffs did not *also* move under 29 U.S.C. § 216(b) to conditionally certify an FLSA collective action. This was no oversight; Plaintiffs have confirmed in open court that they will not seek to certify an FLSA collective action. The individual defendants then moved under Rule 12(c) to dismiss the IMWL claims against them, arguing that the amended complaint's allegations do not plausibly establish a basis for personal liability under the IMWL. Doc. 49.

The same day, De La Riva sought and received leave to cease being a proposed class representative. Docs. 52, 55. Bachmann, Becker, and Milligan then voluntarily dismissed their claims and exited the litigation. Docs. 62, 66. Finally, Houlihan Smith, Houlihan, and Smith moved to dismiss De La Riva's claims pursuant to a settlement agreement he purportedly executed late last year, apparently without his counsel's knowledge. Docs. 64, 70.

The case now stands in the following posture. Perlmutter and De La Riva are the sole remaining plaintiffs. Both have individual claims under the FLSA and the IMWL, and Perlmutter is the sole proposed representative of the putative IMWL class. Perlmutter's motion to certify an IMWL class is fully briefed. The putative class consists of 244 Houlihan Smith employees who allegedly did not receive the minimum hourly wage for all time worked and/or overtime pay for time worked in excess of forty hours per week. Doc. 42 at 5. While no ruling, definitive or otherwise, is made, a review of the briefs shows the case for class certification to be not insubstantial. The individual defendants' motion to dismiss the IMWL claims is fully briefed. Given Houlihan Smith's poor financial condition, if the individual defendants escape personal IMWL liability either on a motion or at trial, there would be little if any practical value to a judgment in the class's favor, assuming one is certified.

As noted above, with original jurisdiction secure due to the FLSA claims, the IMWL claims fall within the court's supplemental jurisdiction under § 1367(a). The question here is whether the court should exercise its discretion under § 1367(c) to relinquish jurisdiction over the state law claims. Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The question whether to retain or relinquish supplemental jurisdiction over state law claims remains open "at every stage of the litigation." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks omitted). Subsection (c)(3) does not apply here because De La Riva and Perlmutter still have their FLSA claims. Remand is warranted, however, under both subsection (c)(2) and subsection (c)(1).

Subsection (c)(2) permits a court to decline supplemental jurisdiction if a lawsuit's state law claims "substantially predominate" over its federal claims. The Seventh Circuit recently considered in *Ervin v. OS Restaurant Services*, *supra*, the application of subsection (c)(2) to suits that involve both FLSA and IMWL claims. The *Ervin* plaintiffs sought to pursue both an FLSA collective action under 29 U.S.C. § 216(b) and an IMWL class action under Rule 23(b)(3). 632 F.3d at 973. The district court "concluded that the difference in size between the larger state-law class and the smaller FLSA collective action made a difference" under subsection (c)(2). *Id*. at 980. On the facts presented, the Seventh Circuit disagreed, holding that "[a] simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase." *Ibid*.

The Seventh Circuit's analysis is worth exploring in some detail. Citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003), the Seventh Circuit noted that "[p]redomination under section 1367 *generally* goes to the type of claim, not the number of parties involved." 632 F.3d at 980 (alteration in original) (emphasis added) (internal quotation marks omitted). That said, the court acknowledged that the Third Circuit in *De Asencio* had held "that the number of state-law plaintiffs might—and did in the case before it—so far outnumber those engaged in the FLSA collective action that the federal action [was] an appendage to the more comprehensive state action." *Ibid.* (alteration in original) (internal quotation marks omitted). On that point, the Seventh Circuit said the following:

> Without taking a position on whether a state-law class might ever so dwarf a federal FLSA action that supplemental jurisdiction becomes too thin a reed on which to ferry the state claims into federal court, we can say conclusively that *in the present case* the disparity between the number of FLSA plaintiffs and the number of state-law plaintiffs is not enough to affect the supplemental jurisdiction analysis. In *the majority of cases*, it would undermine the efficiency rationale of supplemental jurisdiction if two separate forums were required to adjudicate precisely the same issues because there was a different number of plaintiffs participating in each claim. In this case, there are approximately 30 participants in the FLSA collective action and potentially 180 to 250 people who might participate in any of the three Rule 23 classes. … Our case is quite unlike *De Asencio*, where the Third Circuit was confronted with an FLSA collective action involving 447 people and a 23(b)(3) class of 4,100 plaintiffs.

*Id*. at 980-81 (emphasis added) (citation omitted).

The Seventh Circuit offered this analysis in the context of a case involving an FLSA collective action and an IMWL class action. The court held that in "the majority of cases," a disparity between the number of FLSA opt-in plaintiffs and the number of IMWL class members would not establish substantial predominance under subsection (c)(2). The necessary implication

is that a disparity *could* establish substantial predominance in a *minority* of cases—otherwise, the court would have held categorically that a disparity does not establish predominance in "any case," not just in the "majority of cases." The same implication arises from the Seventh Circuit's observation that "[p]redomination under section 1367[(c)(2)] *generally* goes to the type of claim, not the number of parties involved." *Id*. at 980 (first alteration in original) (emphasis added) (internal quotation marks omitted). If the court intended to foreclose the possibility that a numerical disparity ever could establish substantial predominance, it would not have used the word "generally," which connotes a general rule subject to exceptions rather than a categorical prohibition.

The sliver of cases where a disparity can establish substantial predominance, however narrow that sliver might be, plainly encompasses this case. This case does not present what *Ervin* characterized as a "simple disparity" between an IMWL class action and an FLSA collective action, with the IMWL class members outnumbering the FLSA opt-in plaintiffs by less than an order of magnitude. This case instead involves a 122:1 disparity (244 to 2), greater than two orders of magnitude, and over an order of magnitude greater than the disparity present in *De Asencio*, which the Seventh Circuit characterized as "quite unlike" the lesser disparity in *Ervin*. *Id*. at 981.

More significantly, there will be no FLSA collective action here, only individual FLSA claims by two plaintiffs—and, depending on how the pending motion to dismiss De La Riva's claims is resolved, perhaps only one. In *Mims v. Stewart Title Guaranty Co.*, 590 F.3d 298 (5th Cir. 2009), the Fifth Circuit all but held that the disparity between a state law class action and an individual federal action establishes substantial predominance under section (c)(2). *See id*. at

308 (after affirming class certification of a state law claim and reversing class certification of a federal claim, directing "the district court … on remand [to] consider whether" to relinquish supplemental jurisdiction over the state law claims, and remarking that "[t]here is obviously a strong argument that the class action on the state law claims will predominate over the individual federal claims" under subsection (c)(2)). *Ervin* does not take a different view. To the contrary, given *Ervin*'s implicit recognition that substantial predominance may be established by a significant enough disparity between the respective number of participants in an IMWL class action and an FLSA *collective* action, it follows *a fortiori* that substantial predominance may be established by the more significant disparity between an IMWL class action and an FLSA *individual* action. *See Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 218 (N.D. Cal. 1994) ("The RICO claims of the four individual plaintiffs are insignificant compared with the class-wide relief potentially available to plaintiffs under the state consumer protection laws. This is precisely the type of case where the Court should decline to extend federal judicial power [under subsection (c)(2)].").

There is a qualitative, and not merely a quantitative, distinction between an IMWL class action and an FLSA individual action. Perlmutter's and De La Riva's damages, assuming they prevail on liability under the FLSA and/or the IMWL, will be established at trial. Damages for the absent IMWL class members would be determined in post-trial proceedings. As Defendants observe in their class certification brief, this case presents sticky individualized damages issues. Doc. 57 at 9-10. Those issues likely would not forestall class certification under Rule 23. *See Messner v. Northshore Univ. Healtysys.*, __ F.3d __, 2012 WL 129991, at *8 (7th Cir. Jan. 13, 2012) ("It is well established that the presence of individualized questions regarding damages

does not prevent certification under Rule 23(b)(3)."); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010); *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts."); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Those damages issues could, however, bog down the post-trial proceedings and perhaps require judicial involvement. This is important because the post-trial proceedings would be devoted *entirely* to the IMWL claims, as there is no FLSA collective action and thus no absent FLSA opt-in plaintiffs. Subsection (c)(2) requires the court to evaluate substantial predominance "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)). Under those metrics, the necessity for potentially cumbersome post-trial proceedings devoted entirely to the IMWL claims weighs heavily in favor of finding substantial predominance under subsection (c)(2). The same consideration did not arise in *Ervin*, where the post-trial proceedings would involve absent IMWL class members *and* absent FLSA opt-in plaintiffs.

Remand of the IMWL claims is independently appropriate under section (c)(1), which applies where a state law claim "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). As noted above, Houlihan Smith's weak financial condition has made the potential personal IMWL liability of Houlihan, Smith, and Botchway of central practical importance to this case. The question, in a nutshell, is whether the individual defendants are "employers" within the meaning of the IMWL. *See* 820 ILCS 105/4(a)(1) ("[e]very employer shall pay to

each of his employees" the minimum hourly wage set forth in the statute); 820 ILCS 105/4a(1) ("no employer shall employ any of his employees for a workweek of more than 40 hours unless each such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1½ times the regular rate at which he is employed"). Only if the answer is "yes" can there be personal liability.

To the parties' and the court's knowledge, no Illinois reviewing court has had occasion to address the personal liability of managers, officers, or owners under the IMWL or to articulate the governing standard. Plaintiffs contend that the governing standard is the "economic reality" test used to evaluate personal liability under the FLSA. Doc. 54 at 2-3, 5; *see Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, __ F.3d __, 2012 WL 265996, at *7-8 (3d Cir. Jan. 31, 2012) (discussing the "economic realities" test); *Andrews v. Kowa Printing Co.*, 838 N.E.2d 894, 900-01 (Ill. 2005) (same). The individual defendants, by contrast, maintain that the governing standard is the "knowingly permit" test used to evaluate personal liability under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. Doc. 50 at 4-7; Doc. 56 at 2-4; *see Andrews*, 838 N.E.2d at 900-02 (adopting the "knowingly permit" test and expressly rejecting the "economic reality" test for purposes of the IWPCA). The precise substantive differences between the dueling standards are unimportant here. All that needs saying is that the tests turn, at least in part, on different factual predicates and that, as evidenced by their respective proponents, the "economic reality" test is more easily satisfied than the "knowingly permit" test.

Each side finds support for its position in interpretive canons regularly invoked by Illinois courts. Plaintiffs cite the canon that Illinois courts look to FLSA regulations and precedents when applying the IMWL. *See Lewis v. Giordano's Enters., Inc.*, 921 N.E.2d 740, 746 (Ill. App.

2009) ("federal cases interpreting the FLSA, while not binding on this court, are persuasive authority and can provide guidance in interpreting issues under the [IMWL]"); 56 Ill. Admin. Code 210.120 ("For guidance in the interpretation of the [IMWL], the Director [of the Illinois Department of Labor] may refer to the Regulations and Interpretations of the Administrator, Wage and Hour Division, U.S. Department of Labor, administering the [FLSA]."). The individual defendants cite the more general, but equally venerable, canon that when faced with a gap or ambiguity in a particular statute, Illinois courts borrow specific provisions from, or judicial precedents interpreting, a closely related statute. *See Maksym v. Bd. of Elec. Comm'rs*, 950 N.E.2d 1051, 1061 (Ill. 2011) ("related provisions of the Election Code and of the Illinois Municipal Code are to be considered *in pari materia* for purposes of statutory construction"); *DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2005) ("It is appropriate statutory construction to consider similar and related enactments, though not strictly *in pari materia*. We must presume that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious.") (citations omitted); *People v. Masterson*, 798 N.E.2d 735, 749 (Ill. 2003) ("In accordance with that authority"—identified earlier as "the authority to read language into a statute which has been omitted through legislative oversight"—"we believe the [Sexually Violent Persons Commitment Act's] definition of 'mental disorder' should be read into the [Sexually Dangerous Persons Act] to the extent consistency allows and augmented with the standard that appears to emerge from [*Kansas v.*] *Crane*[, 534 U.S. 407 (2002)]."). That canon is potentially applicable here because the IMWL and the IWPCA are closely related statutes, addressing substantially similar topics and appearing in the same volume of the Illinois compiled statutes. *See People ex rel. Martin v.*

*Lipkowitz*, 589 N.E.2d 182, 185 (Ill. App. 1992) ("Obviously, enforcing the public policy underlying the IWPCA inures to the benefit of Illinois workers and taxpayers in precisely the way that the IMWL does.").

It cannot be said with any degree of confidence whether the Illinois judiciary would adopt the "economic reality" test from the FLSA or the "knowingly permit" test from the IWPCA if presented with a question of personal liability under the IMWL. Certification to the Supreme Court of Illinois is not an option, as that court's rules permit certification only from the Supreme Court of the United States and the Seventh Circuit. *See* Ill. Sup. Ct. R. 20(a); *Systemax, Inc. v. Schoff*, 972 F. Supp. 439, 442 (N.D. Ill. 1997). Accordingly, the presence of this novel and difficult question of state law—a question that, as noted above, will have tangible consequences for the parties, particularly if a class is certified—makes it appropriate to relinquish jurisdiction over the IMWL claims pursuant to § 1367(c)(1). *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907-08 (7th Cir. 2007) (affirming the dismissal without prejudice of state law claims due to the presence of "unsettled" state law issues); *De Asencio*, 342 F.3d at 311 (citing two unsettled issues under the Pennsylvania wage-and-hour statute in holding that the district court abused its discretion in declining to relinquish jurisdiction over the state law claims); *Ortegon v. Staffing Network Holdings, LLC*, 2007 WL 541911, at *2 (N.D. Ill. Feb. 15, 2007) (dismissing without prejudice claims under the Illinois Day and Temporary Labor Service Act, 820 ILCS 175/1 *et seq.*, due to an unsettled question under the statute).

There is one loose end to tie before concluding. Defendants' notice of removal purports to premise jurisdiction over the IMWL claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Doc. 1 at 1-2 (citing 28 U.S.C. § 1453, which permits the removal of CAFA

class actions).  If that were right, CAFA would require the court to exercise jurisdiction over the IMWL claims, for jurisdiction then would be original and thus mandatory, not supplemental and thus discretionary.  *See In re Repository Techs., Inc.*, 601 F.3d 710, 721 (7th Cir. 2010).  Yet when asked in open court whether they continued to believe that CAFA applied, Defendants demurred, saying that their invocation of CAFA had been "inadvertent" and thus acknowledging that the only proper basis for jurisdiction over the state law claims is 28 U.S.C. § 1367(a).  In their brief opposing remand, Plaintiffs do not contend that CAFA provides an independent jurisdictional basis for keeping the IMWL claims in federal court.  Doc. 67.  And when asked in open court whether they believed that CAFA applied, Plaintiffs acknowledged that the putative class is seeking less than $5 million, meaning that CAFA's jurisdictional minimum is not satisfied.  *See* 28 U.S.C. § 1332(d)(2).  So despite the notice of removal's invocation of CAFA, § 1367(a) provides the only basis for jurisdiction over the IMWL claims.

The court recognizes that handling the FLSA and IMWL claims in a single proceeding would yield some efficiencies.  But those efficiencies are far outweighed by the considerations set forth above.  Accordingly, the court exercises its discretion under 28 U.S.C. § 1367(c) to relinquish supplemental jurisdiction over the IMWL claims, which are remanded to the Circuit Court of Cook County.  Perlmutter and De La Riva may continue to pursue their individual FLSA claims in federal court if they so choose, subject of course to any applicable defenses.

March 2, 2012

United States District Judge